UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FIREMAN'S FUND INS. CO., : | |
|     Plaintiff, : | |
| : | |
| v. : | 3:08-cv-364 (CFD) |
| : | |
| TD BANKNORTH INS. AGENCY INC., : | |
| f/k/a MORSE, PAYSON & NOYES INS., : | |
|     Defendant. : | |

### RULING ON MOTIONS FOR SUMMARY JUDGMENT

Fireman's Fund Insurance Company and TD Banknorth Insurance Agency filed claims against each other for a declaratory judgment that each is entitled to certain funds held in escrow as a result of a settlement agreement. Pending are the parties' cross motions for summary judgment. For the reasons that follow, Fireman's Fund's motion is granted, and TD Banknorth's motion is denied.

**I.   Background**[1]

Fireman's Fund Insurance Company ("FFIC") provided to TD Banknorth Insurance Agency, Inc. ("TD Banknorth") Errors & Omissions insurance coverage through an Insurance Agents' and Brokers' Professional Liability Policy ("Errors & Omissions Policy") for the policy term of May 1, 2005 through May 1, 2006. The Errors & Omissions Policy provided claims-made professional liability coverage to TD Banknorth, and included a $150,000 deductible for each claim. Robert M. Sullivan Certification ("Sullivan Cert."), Ex. A.

---

[1] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. The parties do not dispute the facts.

Haynes Construction Company ("Haynes") asked TD Banknorth to procure for Haynes a Builder's Risk Policy and an Inland Marine Policy for one of its developments known as Jensen Farm Estates. TD Banknorth procured for Haynes' Jensen Farm Estates a Builder's Risk Policy through Peerless Insurance Company ("Peerless") and an Inland Marine Policy through the Hartford Insurance Company ("The Hartford").

On February 14, 2006, a fire destroyed a single family home being constructed at Lot 14 on the Jensen Farm Estate. Haynes made a claim against Peerless under its Builder's Risk Policy, which Peerless denied after finding that Lot 14 was not covered by the Policy. In particular, Peerless denied the claim on the basis that Haynes had neither paid a separate premium for Lot 14 nor listed Lot 14 in the declarations, as required by the Builder's Risk Policy.

After Peerless denied coverage, Haynes asserted a claim against TD Banknorth, arguing that TD Banknorth had made an error or omission in procuring insurance for Haynes by failing to add Lot 14 to the declaration of the Builder's Risk Policy. Haynes and TD Banknorth then entered into a Settlement Agreement and Release dated July 26, 2006 for $353,989.06 ("July 2006 Agreement and Release"). Sullivan Cert., Ex. B. Pursuant to the TD Banknorth-FFIC Errors & Omissions Policy, TD Banknorth paid toward the settlement its $150,000 deductible, and FFIC paid the remaining $203,989.06. FFIC also claims that it expended $10,055.98 in defense costs, for a total cost of $214,045.04. As part of the July 2006 Agreement and Release, Haynes assigned to FFIC and TD Banknorth all of its rights of claims against Peerless arising from the property damage at Lot 14. In an October 13, 2006 addendum to the July 2006 Agreement and Release, Haynes also assigned to FFIC and TD Banknorth all of its rights of claims against The Hartford arising from the property damage at Lot 14. Sullivan Cert., Ex. C.

The Hartford eventually agreed to settle all claims arising from the Lot 14 fire under the Inland Marine Policy for $120,099.96.  Peerless subsequently agreed to pay $88,333.33 to settle all claims arising from the Builder's Risk Policy.  TD Banknorth, FFIC, Peerless, and The Hartford, memorialized these settlements in a December 7, 2007 Settlement Agreement and Mutual Release ("December 2007 Agreement and Release").  Sullivan Cert., Ex. D.  Pursuant to the December 2007 Agreement and Release, The Hartford and Peerless settlement funds, totaling $208,433.29, were transferred to the escrow agent for TD Banknorth and FFIC.  Id.  However, the December 2007 Agreement and Release did not allocate the $208,433.29 held in escrow between TD Banknorth and FFIC.  Id.  In fact, the December 2007 Agreement and Release provided that "[TD] Banknorth and [FFIC] expressly reserve all rights that they may have against each other relating to the allocation of the $208,433.29 . . . held in escrow." Id. at 3.

FFIC filed the instant action seeking a declaratory judgment that it is entitled to the whole of the $208,433.29 held in escrow.  TD Banknorth filed a counterclaim for declaratory judgment that it is entitled to recover its deductible amount of $150,000, plus costs and attorney's fees, from the $208,433.29 held in escrow.  Agreeing on the above-stated facts, both parties moved for summary judgment.

## II.  Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); accord Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Id. at 255.  The parties do not dispute that Connecticut law governs the Court's ruling in this diversity action.

### III.  Discussion

TD Banknorth argues it is entitled to recover the $150,000 it paid to settle the Haynes claim pursuant to the "made-whole doctrine."  That doctrine provides that "absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." Barnes v. Ind. Auto. Dealers Ass'n of California Health and Benefit Welfare Plan, 64 F.3d 1389, 1394 (9th Cir. 1995) see also In re DeLucia, 261 B.R. 561, 567 (Bankr. D. Conn. 2001).  Connecticut courts adhere to the made-whole rule.  See Wasko v. Manella, 849 A.2d 777, 784 (Conn. 2004) ("[U]nder traditional principles of subrogation, if an insured brings an action against a negligent party, an insurer generally is entitled to recover the amount it paid to the insured only if the amount of damages awarded exceeds the difference between the amount the insurer paid and the insured's actual damages.").  Thus, "in the event of a subrogation dispute between the insurer and its insured, the insured has priority of rights to collect from the responsible third party." Johnny C. Parker, *The Made Whole Doctrine: Unraveling the Enigma Wrapped in the Mystery of Insurance Subrogation*, 70 Mo. L. Rev. 723, 737 (2005).

FFIC first argues that the made-whole rule does not apply to reimbursement of an insured's deductible. The FFIC-TD Banknorth Errors & Omissions Policy provided for a $150,000 deductible.[2] FFIC has cited non-Connecticut authority for the proposition that the made-whole doctrine does not apply to deductibles. See, e.g., 2 Allan D. Windt, *Insurance Claims and Disputes* § 10:6 (5th Ed. 2009) ("Note that the made whole doctrine does not apply to deductibles. If the insured were to be reimbursed for its deductible before the insurer is made whole, the insured would be receiving an unbargained for, unpaid for, windfall. Under the terms of the insurance policy, it was agreed that, as a condition precedent to the insurer being out of pocket for even one dollar, the insured had to first be out of pocket the amount of the deductible."). Nevertheless, the parties have not cited, nor has the Court found, Connecticut decisions explaining how the made-whole rule should apply in a case, such as the instant one, where the insured is responsible for a deductible under the insurance contract. Notwithstanding, the analysis of the Windt treatise is compelling, and this Court agrees. Although in Wasko the

---

[2]Specifically, Section III.4 of the Errors & Omissions policy provides as follows:

a. Before we pay any claim under this policy, we will subtract the Each Claim Deductible Amount shown in the Schedule of this endorsement from damages and defense costs which are incurred with respect to a single claim. We will only pay the lesser of that part of such damages and defense costs which exceeds the Each Claim Deductible Amount, or the Limit of Insurance that applies.

\* \* \* \* \*

c. If we pay part or all of any Deductible Amount to effect settlement of any claim or suit, we will notify the first named insured of our payment of the Deductible. The first name insured shall reimburse us for the part of the Deductible Amount that we paid within 30 days of our notification.

Sullivan Cert., Ex. A, Aggregate Deductible Amendment.

Connecticut Supreme Court held that subrogation under these circumstances is equitable in nature, principles of equity would not seem to prohibit such responsibility for a deductible, especially between commercial entities. The Connecticut legislature also has not prohibited such an arrangement.[3]

In the alternative, FFIC argues that even if the made-whole rule may apply in the case of a deductible, the Errors & Omissions Policy explicitly contracted around the made-whole rule, and provides that FFIC is entitled to recover any third-party payment to TD Banknorth. The parties agree that they could have contracted out of the made-whole rule. See Wasko, 849 A.2d at 782-83 (discussing whether statutory and contractual language contracted around the made-whole rule); see also United States v. Lara, No. 3:08-cr-00169, 2009 WL 3754069, at *2 (D. Conn. Nov. 6, 2009) ("The agreement contains specific language indicating that [the insurer] is to receive any recoveries from [the defendant] before [the insured] may recover the deductible amount. Therefore, the Court finds that the parties intended their contract to override equitable principles as well as the [Mandatory Victims Restoration Act]. In these circumstances, the Court will not disrupt the agreement between the parties. To hold otherwise would effectively extend insurance coverage to the deductible that [the insurer] agreed to pay and thereby defeat the purpose of requiring a deductible in the first place."). Section IV.10 of the Errors & Omissions Policy provides:

> If any insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those

---

[3]FFIC also argues that the made-whole rule does not apply to third-party insurance contracts such as the one between FFIC and TD Banknorth. The Court also declines to rule on that issue at this time, particularly as Connecticut courts appear not to have spoken on it.

> rights to us and help us enforce them.

Sullivan Cert., Ex. A, Section IV.10. FFIC argues that pursuant to this provision, any right of recovery by TD Banknorth was automatically transferred to FFIC after FFIC had made "any payment" under the Policy. FFIC therefore argues that this provision contracts around the made-whole rule–which holds that the insurer must fully indemnify the insured prior to commencing a subrogated claim–by providing that FFIC may assert its subrogated rights as soon as it makes any payment, regardless of whether or not the insured had been made whole.

In opposition, TD Banknorth argues that Section IV.10 is inapplicable in this case, where "[n]othing in the . . . section addresses the relative rights of the insurer and the insured when a partial recovery is made of funds expended by both the insured and the insurer to settle a claim." Def.'s Mem. at 11. TD Banknorth appears to be arguing that because the Policy language does not specifically state that the insurer takes precedence over the insured, the traditional principles of the make-whole doctrine apply. In support, TD Banknorth cites the Connecticut Supreme Court's opinion in Wasko v. Manella, 849 A.2d 777, 784 (Conn. 2004). In Wasko, the Connecticut Supreme Court was asked to determine whether the following language in a fire insurance contract provided the insurer with an inviolate right of subrogation: "[The insurer] may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by [the insurer]." Id. at 783. The Wasko Court held that the language did not provide the "insurer with a direct, and inviolate, right of subrogation. To the contrary, it merely provides that an insurer 'may require' an insured to assign any rights *he* or *she* has to the insurer." Id. (emphasis in original). "Thus," the Court continued, "under this clear language, the right of recovery belongs to the insured, and the insurer only obtains that right

when the insured grants it." Id.

The facts in the instant case are distinguishable from those in Wasko. The language of the Errors & Omissions Policy provides not for transfer of rights only when the insured grants it, Wasko, 849 A.2d at 783, but instead that those rights "are transferred" to FFIC if FFIC has made "any payment" under the Policy. FFIC paid settlement and defense costs in the Haynes settlement, and therefore, under the Errors & Omissions Policy, TD Banknorth's right to recovery was transferred to FFIC. The language in this case is similar to that at issue in American International Speciality Lines v. United States, No. 05-1020 C, 2008 WL 1990859, at * 11 (Fed. Cl. Jan. 31, 2008). In particular, the contract language in American International was as follows: "In the event of any payment under the Policy, [the insurer] shall be subrogated to all the Insured's rights of recovery therefore against any person or organization." Id. The court found that the "fact that [insurer's] subrogation rights arise upon 'any' payment clearly contradicts the make-whole rule. Thus, [the parties] contracted around the make-whole rule by allowing plaintiff to assert a subrogated claim as soon as it made one payment under the policy." Id. Here, as in American International, the contractual language of the Errors & Omissions Policy contradicted the made-whole rule. Therefore, the Court will apply the bargained-for contractual language and award the escrowed funds to FFIC rather than applying the made-whole rule.

**IV.**     **Conclusion**

TD Banknorth's motion to summary judgment [Dkt. # 20] is DENIED.  FFIC's motion for summary judgment [Dkt. # 23] is GRANTED.  A declaratory judgment shall enter that FFIC is entitled to the funds held in escrow.  The Clerk is directed to close this case.

**SO ORDERED** this 1st day of February, 2010, at Hartford, Connecticut.


/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**